IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and<br>THE STATE OF MISSOURI ex rel.<br>CHRIS KOSTER Attorney General,<br>and the MISSOURI DEPARTMENT OF<br>NATURAL RESOURCES | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 5:08-cv-06133-DGK |
| HPI PRODUCTS, INC.,<br>ST. JOSEPH PROPERTIES, LLC,<br>and WILLIAM GARVEY | ) ) ) ) | |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

Background ................................................................................................................1
I.  Jurisdiction and Venue ....................................................................................3
II.  Parties Bound ...................................................................................................3
III.  Definitions........................................................................................................4
IV.  Civil Penalty ....................................................................................................7
V.  Compliance Requirements .............................................................................12
VI.  Project Coordinators ......................................................................................27
VII.  Reporting and Notice Requirements .............................................................29
VIII.  Creation of Imminent Danger; Emergency Response....................................31
IX.  Stipulated Penalties........................................................................................31
X.  Force Majeure .................................................................................................36
XI.  Dispute Resolution..........................................................................................38
XII.  Access; Information Collection and Retention ..............................................41
XIII.  Effect of Decree; Reservation of Rights .......................................................44
XIV.  Notices and Submittals ..................................................................................46
XV.  Public Comment.............................................................................................47
XVI.  Costs................................................................................................................48
XVII.  Modification ...................................................................................................48
XVIII.  Incorporation..................................................................................................48
XIX.  Retention of Jurisdiction................................................................................48
XX.  Integration ......................................................................................................49
XXI.  Effective Date ................................................................................................49
XXII.  Termination ....................................................................................................49
XXXIII.  Signatories; Service.......................................................................................50
XXXIV.  Final Judgment...............................................................................................50

APPENDIX A

Unilateral Administrative Order Nos. RCRA-07-2007-0006, RCRA-07-2007-0007, and RCRA-
07-2007-0011

**CONSENT DECREE**

Plaintiffs United States of America, on behalf of the United States Environmental Protection Agency (EPA), and the State of Missouri ex rel. Chris Koster, Attorney General of Missouri, and the Missouri Department of Natural Resource (MNDR), and Defendants HPI Products, Inc. (HPI), St. Joseph Properties, LLC (SJP), and William Garvey (Garvey), enter into this Consent Decree resolving claims set forth in a Complaint filed in the above-captioned matter.

BACKGROUND

A.      Plaintiffs filed a Complaint in this matter on December 23, 2008 against Defendants to obtain injunctive relief and the assessment of civil penalties for violations of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 (RCRA) et seq.; the Clean Water Act (CWA), 33 U.S.C. § 1251 et seq.; the Emergency Planning and Community Right to Know Act (EPCRA), 42 U.S.C. §§ 11001 et seq.; the Missouri Hazardous Waste Management Law, Sections 260.350 through 260.434, RSMo; the Missouri Clean Water Law, Chapter 644, RSMo; and the respective implementing regulations promulgated thereunder.

B.      HPI owns and operates a manufacturing facility for the formulation and packaging of chemicals, including pesticides, located at 222 Sylvanie  (which includes a nearby storage facility at 313 S. 3rd St.), St. Joseph, Missouri.  SJP owns and HPI operates additional and former chemical (including pesticides) production and storage facilities in St. Joseph, Missouri located at 317 W. Florence Rd., 1301 S. 11th St. (including the contiguous property at 1421 S.11th St.), 1300 S. 8th St., 424 S. 8th St., and 417 S. 4th St (together with the 222 Sylvanie  facility, the Facilities).  Garvey also operates or has operated each of the Facilities.

1

The Complaint alleges that hazardous waste was generated, stored, and disposed of at the Facilities during the time that the Defendants have owned and/or operated them.

C. EPA issued Unilateral Administrative Orders pursuant to 42 U.S.C. § 6973(a) and 42 U.S.C. § 9606(a) on March 21, 2007, March 30, 2007, and August 14, 2007 (collectively, the UAOs, attached hereto as Appendix A), requiring HPI to, inter alia, characterize all wastes, properly dispose of all hazardous wastes, identify all releases of hazardous wastes, and clean up all contamination resulting from such releases, at, respectively, the 417 S. 4th St., 424 S. 8th St., and the 222 Sylvanie Facilities (the UAO Facilities). HPI has prepared a Site Characterization Plan, which has largely been approved by EPA. The UAOs require HPI to, among other things, complete the Site Characterization Work and propose a plan for remediation, if required; and, after EPA approval of the Plan, complete the cleanup. This Consent Decree is intended to address cleanup issues at the remaining Facilities (the Non-UAO Facilities).

D. Defendants have asserted that they have a limited ability to pay a civil penalty and have submitted evidence (Financial Information) to the Plaintiffs to support that claim. HPI is currently operating under Forbearance Agreements pursuant to which its lenders have agreed to not foreclose on their loans so long as HPI operates under strict lender scrutiny of its finances and expenses.

E. By entering into this Consent Decree, the Defendants do not admit any liability arising out of the transactions, occurrences or claims alleged in the Complaint.

F. The Parties acknowledge, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that implementation of

this Consent Decree will expedite the cleanup of the Facilities and avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, without any adjudication of any issue of fact and upon consent and agreement of the parties to this Consent Decree,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355, 33 U.S.C. § 1319(b), and 42 U.S.C. § 6928(a).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391 and 1395, and Section 3008(a) of RCRA, 42 U.S.C. § 6928(a).

3. The Defendants waive any and all objections or defenses they may have to the Court's jurisdiction, and for purposes of this Consent Decree, agree to submit to the Court's jurisdiction.

4. Notice of the commencement of this action was given to the State of Missouri pursuant to 33 U.S.C. § 1319(b) and 42 U.S.C. § 6928(a)(2).

## II. PARTIES BOUND

5. The provisions of this Consent Decree shall apply to and be binding upon the United States, Missouri, Garvey and his assigns, HPI, SJP, and HPI's and SJP's officers, directors, employees, successors, assigns and upon all persons, firms, subsidiaries, divisions, or corporations acting under or for them to the extent allowed by law.

6. No transfer of ownership or operation of any of the Facilities, or any portion thereof, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Defendants of their obligation to ensure that the terms of the Decree are implemented, unless

otherwise provided by applicable law.  At least thirty (30) Days prior to any such transfer, HPI or SJP (whichever is the transferor) shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA, the State, and the United States Department of Justice (DOJ), in accordance with Section XIV of this Decree (Notices and Submittals).  Any attempt to transfer ownership or operation of any of the Facilities, or of any portion thereof, without complying with this Paragraph shall constitute a violation of this Decree.

7.  HPI and SJP shall provide a copy of this Consent Decree to all officers, directors, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  HPI and SJP shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

8.  In any action to enforce this Consent Decree, HPI and SJP shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree, except to the extent such failure is the result of Force Majeure, as defined in Section X of this Decree.

### III.  DEFINITIONS

9.  Unless otherwise stated in this Consent Decree, the terms used in this Consent Decree shall have the meaning set forth in RCRA, 42 U.S.C. § 6901 et seq., and the Missouri Hazardous Waste Management Law, Sections 260.350 through 260.550, RSMo, and the respective implementing regulations promulgated thereunder.  In the event of a conflict, the definitions set

forth the Missouri Hazardous Waste Management Law shall control.  In addition, when the terms listed below are used in this Consent Decree, the following definitions shall apply:

a.  "MDNR" shall mean the Missouri Department of Natural Resources and any successor agency.

b.  "Cleanup" shall mean all actions necessary to achieve Performance Standards, including, but not limited to, removal of contaminated materials, demolition or partial demolition of contaminated structures, monitoring, implementation of institutional controls, and operations and maintenance, and to take such actions.

c.  "Collectibles" shall mean that collection of cars, boats, and parts or accessories thereof identified and listed in an attachment to Garvey's Financial Statement submitted with the Defendants' Financial Information.

d.  "Consent Decree" shall mean this Decree, the attachments to this Decree, and all submissions made pursuant to this Decree and approved in accordance with Paragraph 22 (Approval of Deliverables).

e.  "Contractor" shall mean any contractor, subcontractor, consultant, or laboratory retained to conduct or monitor any portion of the work performed pursuant to this Consent Decree.

f.  "Day" or "Days" as used herein shall mean a calendar day or days, unless otherwise indicated.

g.  "Effective Date" shall mean the date on which the Court approves this Decree as recorded in the Court's docket.

h.  "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies;

i.  "EPA Regional Screening Levels" shall mean the Regional Screening Levels for Chemical Contaminants at Superfund Sites, currently available at http://www.epa.gov/reg3hscd/risk/human/rb-concentration_table/index.htm, and any updates, additions, or amendments thereto, including changes in nomenclature.

j.  "Facilities" shall mean the facilities, as that term is defined in 40 C.F.R. § 260.10, located at 222 Sylvanie (including the nearby storage facility at 313 S. 3rd St.), 317 W. Florence Rd., 1301 S. 11th St. (including the contiguous property at 1421 S.11th St.), 1300 S. 8th St., 424 S. 8th St., and 417 S. 4th St., all in St. Joseph Missouri.

k.  "HPI" shall mean Defendant HPI Products, Inc., a corporation organized and existing under the laws of the State of Missouri.

l.  "Non-UAO Facilities" shall mean the Facilities located at 317 W. Florence Rd., 1301 S. 11th St., and 1300 S. 8th St., in St. Joseph, Missouri.

m.  "Performance Standards" shall mean the applicable screening levels, cleanup levels, standards of control, or other substantive requirements, criteria, or limitations (including, without limitation, concentrations of chemicals of concern, facility conditions, and institutional controls) set forth in any work plan developed pursuant to this Decree and approved by EPA, following an opportunity for review and comment by MDNR.

n. "Plaintiffs" shall mean the State of Missouri and the United States.

o. "State" shall mean the State of Missouri.

p. "United States" shall mean the United States of America, acting on behalf of EPA.

q. "SJP" shall mean St. Joseph Properties, LLC  a limited liability corporation organized and existing under the laws of the State of Missouri.

r. The "UAOs" shall mean the Unilateral Administrative Orders issued pursuant to 42 U.S.C. § 6973(a) and 42 U.S.C. § 9606(a) with docket numbers RCRA-07-2007-0006, RCRA-07-2007-0007, and RCRA-07-2007-0011, attached hereto as Appendix A.

s. "UAO Facilities" shall mean the facilities located at 313 3rd St., 222 Sylvanie, 417 S. 4th St., and 424 S. 8th St., in St. Joseph, Missouri.

## IV.  CIVIL PENALTY

10.  Payment of Civil Penalty by HPI to the United States.  Within no more than three years after the Effective Date of this Consent Decree, HPI shall pay as a civil penalty to the United States the total sum of $62,500, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.  The civil penalty shall be payable in four (4) equal installments as set forth below in Paragraph 18 (Payment Method to United States).  The first such installment shall be paid not later than ninety (90) Days after the Effective Date.  The second such installment shall be paid not later than 365 Days after the Effective Date.  The third such installment shall be paid

not later than 730 Days after the Effective Date. The final installment shall be made no later than 1094 days after the Effective Date.

11. <u>Payment of Civil Penalty and Other Costs by HPI to the State.</u>

    a. Within no more than three years after the Effective Date of this Consent Decree, HPI shall pay the total sum of $62,500 as a civil penalty to the State, payable in four (4) equal installments as forth below in Paragraph 19 (Payment Method to the State) together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging. The first such installment shall be paid not later than ninety (90) Days after the Effective Date. The second such installment shall be paid not later than 365 Days after the Effective Date. The third installment shall be paid not later than 730 Days after the Effective Date. The final installment shall be paid no later than 1094 days after the Effective Date.

    b. Within one hundred twenty (120) Days after the Effective Date, HPI shall pay an additional sum of $5,980.30 to reimburse the State for its past costs incurred in connection with investigation and Cleanup of the Facilities ("Past Costs"). A check for $3202.74, should be sent to the "State of Missouri Hazardous Waste Fund" as forth below in Paragraph 19 (Payment Method to the State). A check for $2777.56, should be sent to the "State of Missouri" as forth below in Paragraph 19 (Payment Method to the State).

c.  Within two hundred forty (240) Days after the Effective Date, HPI shall pay an additional sum of $17,540.00 to reimburse the State for its future costs of overseeing the Cleanup of the Facilities ("Oversight Costs").

12.  <u>Initial Payment of Civil Penalty by Garvey to the United States.</u>  Within no more than ninety (90) Days after the Effective Date of this Consent Decree, Garvey shall pay as a civil penalty to the United States the sum of $12,500, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.  The payment shall be made as set forth below in Paragraph 18 (Payment Method to United States).

13.  <u>Initial Payment of Civil Penalty by Garvey to the State.</u>  Within no more than ninety (90) Days after the Effective Date of this Consent Decree, Garvey shall pay as a civil penalty to the State the sum of $12,500, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.  The payment shall be made as set forth below in Paragraph 19 (Payment Method to the State).

14.  <u>Additional Civil Penalty Payments to the United States and the State Upon Sale of the Collectibles.</u>  Within no more than thirty (30) Days of the sale of the Collectibles in accordance with Paragraph 16 (Agreement to Sell Collectibles), below, Garvey shall pay 45% of the net proceeds of the sale to the United States as a civil penalty and 45% of the net proceeds of the sale to MDNR as a civil penalty.  As used in this paragraph, "net proceeds of the sale" means the selling price of the Collectibles minus only customary and reasonable sales and appraisal costs and commission fees charged by a licensed public auctioneer in the State of Missouri.

Payment shall be made by the method specified in Paragraphs 18 (Payment Method to United States) and 19 (Payment Method to the State) below.

15. <u>Inspection and Appraisal of the Collectibles</u>. Within no more than sixty (60) Days of the Effective Date, Garvey shall submit to the United States and MDNR, in accordance with Section XIV (Notices and Submissions), an inspection and appraisal report by a licensed public auctioneer in the State of Missouri. Such report shall set forth the licensed appraiser's good faith and independent estimate of the value of the Collectibles.

16. <u>Agreement to Sell Collectibles</u>. Garvey hereby agrees to use all reasonable, good faith efforts to sell the Collectibles. Such reasonable good faith efforts shall include, but not be limited to, the following:

> a. Using his best efforts to ensure that the Collectibles are sold at the highest price reasonably feasible;
>
> b. If an auctioneer is to be used, using an auctioneer that is licensed in the State of Missouri and who shall follow the usual and normal practices for selling personal property, including, for example, listing the Collectibles in one or more personal property listing services regularly used by public auctioneers, as well as using other reasonable means to ensure that the availability of the Collectibles is known to potential buyers; and
>
> c. Selling the property for an amount no less than the appraisal submitted to the United States and State in accordance with Paragraph 15 (Inspection and Appraisal of the Collectibles).

17. <u>Deadline for Sale of Collectibles</u>.  Garvey shall complete the sale of the Collectibles no later than one year after the Effective Date.  In the event the Collectibles have not been sold by that date, Garvey shall provide the United States and the State, in accordance with Section XIV (Notices and Submissions), a full description of all efforts made to sell the Collectibles and an explanation why he has been unable to complete such a sale.  Based upon Garvey's submission, as well as other information the United States and the State may gather independently, the United States, after consultation with the State, shall determine each year thereafter whether this Paragraph shall be terminated or extended for an additional period of one year.

18. <u>Payment Method to the United States</u>.  Defendants shall pay the civil penalties due by FedWire Electronic Funds Transfer (AEFT@) to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Missouri, 400 E. 9th Street, Kansas City, MO, 816-426-3122.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in <u>United States and State of Missouri v. HPI Products, et al.,</u> and shall reference the civil action number and DOJ case number 90-5-1-1-09338, to the United States in accordance with Section XIV of this Decree (Notices and Submissions); by email to *acctsreceivable.CINWD@epa.gov*; and by mail to:

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio  45268

11

19. <u>Payment Method to the State.</u>  Defendants agree to submit any civil penalties to the State by certified check made payable to the "State of Missouri (Buchanan County Treasurer)", as custodian of the Buchanan County School Fund.  The check shall be sent to the Attorney General to the following address:  Collections Specialist, Office of the Attorney General, P.O. Box 899, Jefferson City, Missouri, 65102-0899.  Payments for the State's Past Costs and Oversight Costs, as set forth in Paragraphs 11.b. and 11.c should be sent to the same address.

20. <u>Interest on Unpaid Amounts Due</u>.  If a Defendant fails to make any payment required by this Section IV in full when due, then interest shall accrue from the date of entry of this Consent Decree on any unpaid portion of the penalty at the rate established pursuant to 28 U.S.C. § 1961 and shall continue to accrue until full payment is made.  Interest shall be compounded annually.  Furthermore, the United States and State may institute proceedings to collect the civil penalty, all accrued interest, and stipulated penalties.

21. <u>Tax Consequences</u>.  The Defendants shall not deduct the civil penalties paid under this section or Section IX (Stipulated Penalties) in calculating their federal or state income tax.

V. <u>COMPLIANCE REQUIREMENTS</u>

22. <u>Approval of Deliverables</u>.  All documents required to be submitted for approval by EPA, following consultation with MDNR, or any closure plan submitted to MDNR for approval, under this Consent Decree shall be submitted to EPA and MDNR pursuant to Section XIV (Notices and Submissions).  After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA, after consultation with MDNR, shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder, or (d) disapprove the submission.

12

23.  If a submission is approved pursuant to Paragraph 22(a), HPI shall take all actions required by such submission as approved.  If a submission is conditionally approved or approved only in part, pursuant to Paragraph 22(b) or (c), then HPI shall take all actions required by the portion that was approved and in compliance with any specified conditions, subject to HPI's right to dispute only the disapproved portions or the specified conditions under Section XI of this Decree (Dispute Resolution).

24.  If a submission is disapproved in whole or in part pursuant to Paragraph 22(c) or (d), HPI shall, within no more than fifteen (15) working Days, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding paragraphs, unless HPI initiates dispute resolution under Section XI of this Decree (Dispute Resolution).  If the resubmission is approved in whole or in part, HPI shall proceed in accordance with the preceding paragraph.

25.  If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may, after consultation with MDNR, again require HPI to correct any deficiencies, in accordance with the preceding paragraphs, or may itself correct any deficiencies, subject to HPI's right to invoke dispute resolution and the right of EPA and MDNR to seek stipulated penalties as provided in the preceding paragraphs.

26.  Permits.  HPI and SJP shall be required to obtain any necessary permits required in order to perform the activities specified in this Consent Decree except as otherwise provided herein or under applicable law. Where any compliance obligation under this Consent Decree requires HPI or SJP to obtain a federal, state, or local permit or approval, HPI or SJP, as appropriate, shall submit timely and complete applications and take all other actions necessary to

obtain all such permits or approvals. HPI and SJP may seek relief under the provisions of Section X of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation if HPI or SJP, as appropriate, has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

27. Contractor and Project Manager Selection

a. Within seven (7) days of the Effective Date, HPI shall select a proposed Contractor and submit that proposed Contractor's name and qualifications, including its Quality Management Plan (QMP), to EPA. HPI's selection of a Contractor shall be subject to EPA's approval after consultation with MDNR. The proposed Contractor shall have a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and a QMP that is prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. The Contractor, once approved by EPA, shall carry out all activities set forth in this Section V (Compliance Requirements)

b. Within seven (7) days of the Effective Date, HPI shall select a proposed Project Manager and submit that proposed Project Manager's identity and qualifications to EPA and MDNR. The proposed Project Manager shall be a

registered professional engineer or a registered geologist with expertise in hazardous waste clean-up.  HPI's selection of a Project Manager shall be subject to EPA's approval after consultation with MDNR.  All work performed pursuant to this Section V (Compliance Requirements) shall be under the direction and supervision of the approved Project Manager, who shall be responsible for the administration of all of HPI's responsibilities under this Section V (Compliance Requirements).

c.  HPI shall also notify EPA and MDNR of the name and qualifications of any other contractors or subcontractors retained to perform work under this Section V (Compliance Requirements) at least seven (7) days prior to the commencement of such work.  Such other contractors or subcontractors shall be subject to the approval of EPA after consultation with MDNR.

d.  If EPA disapproves of a proposed Project Manager, Contractor, or other contractor or subcontractor, HPI shall, within fourteen (14) days, propose a different Project Manager, Contractor, or other contractor or subcontractor that meets EPA's requirements and submit their qualifications to EPA and MDNR for approval after consultation with MDNR.

28.  <u>Identification of Releases</u>.  Within no more than fifteen (15) Days of the Effective Date of this Decree, HPI shall submit for EPA approval a Release Identification Report that identifies all processes and all drums, totes, carboys, vats, bags, super sacks, tanks, and/or any other container that are leaking, spilling, and/or otherwise releasing products, used oil, solid waste, and/or hazardous wastes at any of the Non-UAO Facilities.  The Release Identification

Report shall include a complete description of any such release, including its location identified on a to-scale map of the relevant facility. HPI shall stop each identified release and Cleanup each identified release immediately upon discovering it or as soon as practicable thereafter, and in any event not later than thirty (30) Days after the Effective Date of this Decree; except that if EPA determines that a release cannot be cleaned up within no more than forty-five (45) Days of the Effective Date of this Decree because further investigation or sampling is required to determine Cleanup requirements, such Cleanup shall be accomplished pursuant to Paragraph 33 (Site Characterization Work Plan).

29. <u>Release Remediation Report</u>. Within no more than sixty (60) Days of the Effective Date of this Decree, HPI shall submit for EPA approval a Release Remediation Report to EPA and MDNR demonstrating that all releases identified in the Release Identification Report (or otherwise known to HPI to be occurring at the Non-UAO Facilities) have been stopped and Cleaned up, except for releases as to which further investigation or sampling is required to determine Cleanup requirements. The Release Remediation Report shall include a description of each release, the name(s) of the chemical and/or waste associated with the release, the name(s) of the chemical and/or waste released, the amount of waste generated during the remediation, the steps taken to Cleanup the release, photographs showing the release and remediation of the release, and manifests, receipts, and/or bills of lading for each waste disposed of as a result of remediation.

30. <u>Solid Waste Inventory</u>. Within no more than thirty (30) Days of the Effective Date of this Decree, HPI shall complete an inventory of all drums, totes, carboys, tanks, vats, and other containers present at each Non-UAO Facility and submit for EPA approval a Solid Waste

Inventory Report.  HPI shall make a solid waste determination as to each drum, tote, carboy, tank, vat, or other container and its contents in accordance with the requirements of 40 C.F.R. Part 260, Appendix I, incorporated by reference in 10 C.S.R. 25-3.260(1).  The Solid Waste Inventory Report shall include a description of each such drum, tote, carboy, tank, vat, or other container including its size and contents, and the corresponding solid waste determination.  Raw materials or packaging in intact, non-leaking containers that is or are used for products that have been both produced and sold not more than 365 days prior to the Effective Date of this Decree ("Manufacturing Inventory") must be identified in the Solid Waste Inventory Report but need not be inventoried, provided that for each such raw material and/or packaging, HPI shall identify the product and its last date of production and its last date of sale.  HPI shall inventory and perform a waste determination on raw materials and packaging for products that have not been both produced and sold not more than 365 days preceding the Effective Date of this Decree.  If in the Solid Waste Inventory Report, HPI claims any of the material, other than Manufacturing Inventory, is product rather than waste, then HPI must identify the material, describe the condition of the container, produce inventory logs or receipts, if any, demonstrating how long the material has been stored, describe the amount and location of the material in the warehouse, and provide a photograph.  In addition, HPI must provide records of how this product has been used in the past, how much of this product has been purchased in the past five years, the intended use of the product in the future, and provide the Material Safety Data Sheet (MSDS).  HPI shall not relocate or remove any of the materials other than Manufacturing Inventory identified pursuant to this paragraph until EPA, after consultation with MDNR, approves any such relocation or removal in writing.

31. <u>Hazardous Waste Inventory and Immediate Removal Plan</u>.  Within no more than ninety (90) Days of the Effective Date of this Decree, HPI shall submit for EPA approval an Inventory and Immediate Removal Plan for identifying and shipping all hazardous waste located at the Non-UAO Facilities to an appropriate hazardous waste disposal facility.  The Inventory and Immediate Removal Plan shall include the following:

a. <u>Quality Assurance Project Plan (QAPP)</u>.  The QAPP shall address quality assurance, quality control, and chain of custody procedures in accordance with "EPA Requirements for Quality Assurance Project Plans" (EPA QA/R-5, EPA/240/B-01/003, March 2001) and "EPA Guidance for Quality Assurance Project Plans" (EPA QA/G-5, EPA/240/R-02/009, December 2002), as well as other such applicable guidance identified by EPA.  The QAPP shall describe the procedures that will be used for sampling and analysis of solid waste identified in the Solid Waste Inventory Report for the purpose of conducting hazardous waste determinations in accordance with the Missouri Hazardous Waste Management Law, including 40 C.F.R. 262.11, as incorporated by reference at 10 C.S.R. 25-5.262(1).  The QAPP shall describe the proposed sampling procedures that will be employed to ensure that samples are collected and analyzed using EPA-approved protocols.  In addition the QAPP shall describe the number and type of samples to be collected, the method(s) of collection and analysis, and criteria for determining sampling locations. The QAPP approved by EPA for the UAO Site Characterization Plan along with site-specific addenda for each non-UAO facility will meet the requirements of this paragraph, except to the extent that 1) non-

substantive changes to personnel, contractors, or laboratories identified in the original QAPP require updating; and/or 2) HPI proposes to alter any sampling type, analytical protocol, or other type of work from what was proposed for the UAO facilities, in which case HPI shall submit any such changes to EPA for approval.

b.  Health and Safety Plan (HASP).  The HASP, which shall be implemented during field activities, shall be consistent with applicable Occupational Safety and Health Administration (OSHA) regulations. The HASP approved by EPA for the UAO Site Characterization Plan along with site-specific addenda for each non-UAO facility will meet the requirements of this paragraph, except to the extent that 1) non-substantive changes to personnel, contractors, or laboratories identified in the original QAPP require updating; and/or 2) HPI proposes to alter any sampling type, analytical protocol, or other type of work from what was proposed for the UAO facilities, in which case HPI must submit any such changes to EPA for approval.

c.  Identity of any disposal facility to which HPI proposes to ship wastes along with a list identifying such facility's applicable permits and/or licenses.

d.  Schedule under which HPI shall complete all activities called for in the Inventory and Immediate Removal Plan.  This schedule shall, at a minimum, provide that:

(i)  within no more than forty-five (45) Days of EPA's approval of the Respondent's Inventory and Immediate Removal Plan, HPI shall complete all

sampling activities necessary for the completion of hazardous waste determinations on all identified solid wastes;

(ii)  within no more than sixty (60) Days of EPA's approval of the Inventory and Immediate Removal Plan, HPI shall complete the hazardous waste determinations on all identified solid wastes;

(iii)  within no more than fifteen (15) Days of the completion of the hazardous waste determinations, HPI shall provide a Revised Solid Waste Inventory Report for EPA approval that identifies each solid and hazardous waste located at each Non-UAO facility (including the waste determination, the name of the waste stream, the waste code, amount of waste, type of container, and exact location within the facility), describes how HPI arrived at the waste determination for each identified waste (e.g., process knowledge, labeling, field screening, analytical sampling, etc.), identifies the disposal facility that will receive each waste stream, and includes all data supporting each hazardous waste characterization (including, but not limited to, the sample number for each sample taken and for each hazardous waste determination, any MSDS utilized for waste determinations, copies of labels or photographs of labels utilized to assist in waste determinations, field logs, field sheets, waste profiles, field screening sampling data, and analytical laboratory data);

(iv)  within no more than seven (7) Days of EPA's approval of the Revised Solid Waste Inventory Report, including the hazardous waste determinations

made therein, HPI shall begin shipping solid and hazardous wastes to an approved disposal facility identified pursuant to subparagraph (c) of this paragraph; and

(v) HPI shall complete the shipment of all solid and hazardous waste within no more than forty-five (45) Days of the completion of the sampling activities.

32. <u>Waste Disposal and Waste Disposal Report</u>.

a. HPI shall implement all activities called for in the Inventory and Immediate Removal Plan in accordance with its terms and schedule.

b. No later than forty-five (45) Days after all solid and/or hazardous wastes have been shipped off-site from the Non-UAO Facilities for disposal in accordance with the Inventory and Immediate Removal Plan, HPI shall submit to EPA and MDNR a Waste Disposal Report that includes documentation that all disposal activities are complete and were carried out in accordance with the Inventory and Immediate Removal Plan and the applicable requirements of the Missouri Hazardous Waste Management Law, including but not limited to manifest numbers used for hazardous waste shipments (including line numbers), bills of lading or receipts documenting disposal of solid wastes, and any Land Disposal Restriction (LDR) Notices. In the event that HPI has not received all confirmations of off-site disposal from the Non-UAO Facilities at the time the Waste Disposal Report is due, HPI shall submit supplemental reports as it receives additional confirmations. HPI shall notify EPA and MDNR immediately

upon learning that any shipment of solid and/or hazardous waste is being or has been returned to HPI.

33. <u>Site Characterization Work Plan</u>. Within no more than sixty (60) Days of completion of off-site disposal of all solid and/or hazardous waste at the Non- UAO Facilities, HPI shall submit to EPA for approval a Site Characterization Work Plan for the investigation of contamination of the areas where wastes were stored, including underground storage tanks, and/or where releases of solid and hazardous wastes have or may have occurred at each of the Non-UAO Facilities; provided that, to the extent that data developed during the Site Characterization of the UAO Facilities is relevant to development of a Site Characterization Work Plan for the non-UAO Facilities, HPI may submit an amended Site Characterization Work Plan for the non-UAO Facilities within thirty (30) Days of EPA's approval of the Site Characterization Report for the UAO Facility containing such data. The Site Characterization Work Plan shall include a Field Sampling Plan, QAPP, and HASP to assess onsite releases and off-site migration of waste, shall propose risk-based screening levels for assessing such releases, and shall provide for the development of a Cleanup Work Plan for the buildings and any surrounding areas following the completion of Site Characterization. The QAPP and HASP shall meet the requirements listed in subparagraphs 31(a) and (b), respectively. The Site Characterization Work Plan shall include a schedule for completion of all activities necessary to characterize any contamination and to identify necessary Cleanup Work, including the submission of the Site Characterization Report and Cleanup Work Plan. HPI shall carry out all activities required pursuant to the EPA-approved Site Characterization Work Plan in accordance with the schedules contained therein.

34.  Site Characterization Report and Cleanup Work Plan. Within no more than one hundred-eighty (180) Days of EPA's approval of the final Site Characterization Report for the UAO Facilities, or such lesser time as is set forth in the approved Site Characterization Work Plan, HPI shall submit for EPA approval the Site Characterization Report and a Cleanup Work Plan.

a.       The Site Characterization Report shall describe all activities taken pursuant to the Site Characterization Work Plan, assess onsite releases and off-site migration of waste as well as contamination levels onsite and (to the extent there has been off-site migration of releases) off-site.  In addition, the Site Characterization Report shall include all data relating to all samples collected during the implementation of the Site Characterization Work Plan (including, but not limited to, field logs, field sheets, waste profiles, field screening sampling data, and analytical laboratory data).

b.       The Cleanup Work Plan shall set forth a work plan for the Cleanup of the facilities and risk-based performance standards.  These risk-based performance standards shall not be less stringent than the EPA Regional Screening Levels; provided that HPI may submit for EPA approval a work plan for a site-specific risk assessment, which, if approved by EPA and properly carried out by HPI, may be used to justify less stringent performance standards.  The Cleanup Work Plan shall also propose a schedule for the completion of the Cleanup (including for the submission of the Site Cleanup Final Report), which may propose that Cleanup begin following the completion of work at the UAO Facilities but in any event must propose Cleanup completion (except for operation and maintenance, periodic monitoring requirement, or continuous long-term remediation

of groundwater) not later than five years from the Effective Date of the Consent Decree. HPI shall carry out all activities required pursuant to the EPA-approved Cleanup Work Plan in accordance with the schedules contained therein.

35. <u>Site Cleanup Final Report</u>.  Within no more than sixty (60) Days of completion (except operation and maintenance, periodic monitoring requirements, or continuous long-term remediation of groundwater) of the work called for in the Cleanup Work Plan, or such lesser time as is set forth in the Site Characterization Report and Cleanup Work Plan, HPI shall submit for EPA approval, after consultation with MDNR, a Site Cleanup Final Report for the Non-UAO Facilities to EPA and MDNR that describes all activities taken pursuant to the Site Characterization Report and Cleanup Work Plan and identifies any additional areas requiring cleanup.  The Final Report must also include all data relating to all samples collected during the implementation of the Site Characterization Report and Cleanup Work Plan (including, but not limited to, field logs, field sheets, waste profiles, field screening sampling data, and analytical laboratory data).

36. <u>Further Cleanup Work</u>.  EPA, after consultation with MDNR, may determine that Cleanup work, in addition to that in any approved Cleanup Work Plan, at the Non-UAO Facilities is required to protect human health and the environment, which may include further investigation, further removal of contaminated material, or further disposal of contaminated materials.  EPA, after consultation with MDNR, shall notify HPI in writing of any such determination along with the basis and reasons therefor, and shall direct HPI to submit to EPA and MDNR an Additional Work Plan for such Further Cleanup Work.  HPI shall, within no more than thirty (30) Days of receipt of such determination and direction, submit to EPA and MDNR

an Additional Work Plan describing the actions to be taken in response to EPA's determination. Within no more than fifteen (15) Days of receipt of EPA's approval, after consultation with MDNR, of the Additional Work Plan, or by such later deadline as is otherwise set forth in the approved Additional Work Plan, HPI shall implement the requirements of the approved Additional Work Plan in accordance with its terms, subject to the right to initiate dispute resolution pursuant to Section XI (Dispute Resolution).

37. <u>Compliance with UAOs</u>.  HPI shall complete all remaining work pursuant to the UAOs, which are incorporated by reference and attached hereto as Appendix A. In the event that a dispute arises concerning any work on the UAOs involving a possible conflict with the provisions of this Consent Decree, HPI may initiate dispute resolution pursuant to Section XI (Dispute Resolution).  If a conflict exists, the provisions of the relevant UAO will govern.

38. <u>Site Specific Stormwater Permits</u>.  Within no more than thirty (30) Days of the Effective Date, HPI shall complete all the necessary requirements to apply for a Site Specific Stormwater Permit for its entire operation at the 222 Sylvanie facility pursuant to Sections 644.055 and 644.076, RSMo and 10 C.S.R. 20-6.200(6)(A)4 and shall modify its application in accordance with instructions from MDNR, if any, as necessary to obtain such a permit.  In addition, within no more than thirty (30) Days after receiving MDNR's comments on HPI's Storm Water Pollution Prevention Plan for its 317 W. Florence Rd. facility previously submitted to MDNR on December 18, 2009, HPI shall submit a written response to MDNR addressing the comments on its Storm Water Pollution Prevention Plan, and if necessary revise the Storm Water Pollution Prevention Plan in accordance with instructions from MDNR.

39.  <u>Additional Stormwater Controls</u>.  Within no more than thirty (30) Days of the Effective Date, HPI shall submit to EPA for approval a Stormwater Work Plan for the 317 W. Florence Road facility that identifies the measures HPI will take to ensure that stormwater HPI collects from W. Florence Road does not come into contact with stormwater HPI collects from any of its operational containment areas prior to discharge.  The Stormwater Work Plan shall also include a sampling and analysis plan for all areas where stormwater is collected and all areas where it is discharged.  HPI shall implement the approved Stormwater Work Plan in accordance with the schedule set forth therein.

40.  <u>Zero Discharge to POTW</u>.  Within no more than thirty (30) Days of the Effective Date of this Decree, HPI shall submit for EPA approval, after consultation with MDNR, a Zero Discharge Work Plan for its process wastewater that specifies the steps HPI will take to achieve zero discharge to the Publicly Owned Treatment Works (POTW), within the meaning of 40 C.F.R. § 455.46(a), at its 222 Sylvanie and 317 W. Florence Road facilities.  The Zero Discharge Work Plan shall include, as necessary, the plugging of floor drains, routing of waste lines away from floor drains or sanitary sewer access points, etc.  HPI shall implement the approved Zero Discharge Work Plan on the schedule set forth therein.

41.  <u>Effect of Financial Hardship on Compliance</u>.  HPI shall within three (3) days notify EPA and MDNR in writing if it learns that a lender has refused or will refuse to approve expenditures necessary for compliance with this Consent Decree, including without limitation all work plans, schedules, and other documents approved pursuant to Section V (Compliance).  Such notification shall include 1) all communications between HPI and the relevant lender referring or relating to the anticipated expenditure, including without limitation all budget

requests, balance statements, cash flow statements, and income statements; 2) evidence that HPI informed the bank that such expenditures were necessary to comply with this Consent Decree; 3) a letter from the bank explaining the refusal to authorize the expenditure; 4) an explanation of why HPI cannot comply with the Consent Decree in the absence of the approved expenditure; 5) an express waiver of any confidentiality protection that HPI believes would otherwise prevent EPA from contacting the lender directly about the refusal to approve the expenditure; and 6) a proposed extension of time, which shall not be longer than six months, for HPI to obtain authorization for funding.  EPA, after consultation with MDNR, shall not unreasonably deny the first such request for a proposed extension of time in any two calendar year period; provided, however, that a) EPA shall deny any request for extension if EPA determines that HPI has provided incomplete, inaccurate, false, or misleading information to the lender; b) no extension of time granted hereunder will in and of itself extend the time to comply with any other Consent Decree obligation and c) no more than two such extensions of time based upon a lender's refusal to authorize an expenditure necessary for compliance shall be granted in any calendar year unless HPI demonstrates manifest necessity and EPA determines, in its sole discretion, that any further extension will not create an imminent and substantial endangerment to human health or the environment.

## VI.  PROJECT COORDINATORS

42.  The parties designate the following individuals to act as Project Coordinators to monitor the progress of the activities required under this Consent Decree, to communicate informally concerning problems which have arisen or which are anticipated in the

implementation of this Consent Decree, and to coordinate communications among HPI, MDNR, and EPA:

As to EPA:

Kevin D. Snowden
Environmental Scientist
AWMD/WEMM
U.S. EPA Region VII
901 North 5th Street
Kansas City, Kansas 66101
913-551-7022
snowden.kevin@epa.gov

As to MDNR:

Candace Bias
Environmental Specialist
Hazardous Waste Program
Compliance and Enforcement Section
Missouri Department of Natural Resources
P.O. Box 176
1730 E. Elm St.
Jefferson City, Missouri 65102
candace.bias@dnr.mo.gov

As to HPI:

Robert Garvey
HPI Products, Inc.
222 Sylvanie
St. Joseph, Missouri 64501
816-233-1237
Bobgarvey@hpipi.com

43.  Such coordination and informal communication by the Project Coordinators shall not relieve the Parties of any notice and reporting requirements set forth elsewhere in this Decree and its attachments.  Notwithstanding the selection of HPI's Project Coordinator, all work performed pursuant to Section V (Compliance Requirements) shall be under the direction and

supervision of HPI's Project Manager approved in accordance with Paragraph 27 (Contractor and Project Manager Selection).

44. The United States, MDNR and HPI shall each have the unilateral right to change their respective Project Coordinator. Such a change does not require approval of the Court and shall be accomplished by notifying the other Project Coordinators of the change in writing at least seven (7) Days prior to the effective date of the change.

45. The absence of the EPA Project Coordinator, the MDNR Project Coordinator, or the HPI Project Coordinator shall not be cause for the stoppage of work.

## VII. REPORTING AND NOTICE REQUIREMENTS

46. In addition to the reporting requirements set forth in Section V (Compliance Requirements), if HPI violates, or has reason to believe that it may violate, any requirement of this Consent Decree, HPI shall notify the United States and the State of such violation and its likely duration, in writing, within no more than ten (10) Days of the day HPI first becomes aware of the violation or potential violation, with a description of the violation, an explanation of the cause of the violation and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, HPI shall so state in the report. HPI shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within no more than thirty (30) Days of the day HPI becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves HPI of its obligation to provide the notice required by Section X of this Consent Decree (Force Majeure).

47.  All reports, proposals, notices and other documents required to be submitted pursuant to this Decree shall be provided to the Project Coordinators in hard copy (i.e., not solely by electronic mail) as specified in Paragraph 42, and shall be hand-delivered, sent by certified mail, return receipt requested, or by overnight express mail.  All due dates shall be calculated from the date the hard copy is sent, which shall be determined from the post-mark (if by mail), delivery label (if by overnight), or receipt (if hand-delivered).  Courtesy copies of notices provided by electronic mail shall not start the running of any time period.

48.  Each report, proposal, notice or other deliverable submitted by HPI that makes any representation concerning HPI's compliance or noncompliance with any requirement of this Decree shall be signed by a responsible corporate officer of HPI who meets the definition of authorized representative in 10 C.S.R. 25-3.260, incorporating by reference 40 C.F.R. § 260.10, and shall include the following certification:

> I certify under penalty of law that I have personally examined and am familiar with the information submitted in this document and all attachments and that, based on my inquiry of those individuals immediately responsible for obtaining the information, I believe that the information is true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

49.  The reporting requirements of this Consent Decree do not relieve HPI of any reporting obligations required by RCRA, the Missouri Hazardous Waste Law, the Missouri Clean Water Law,  their implementing regulations, or by any other federal, state, or local law, regulation, permit, or other applicable requirement.

## VIII.  CREATION OF DANGER; EMERGENCY RESPONSE

50.  Upon the occurrence of any incident or discovery of any condition that causes or threatens a release of hazardous waste into the environment in a quantity requiring reporting under the provisions of 40 C.F.R. 302.4 from any of the Facilities, or discovery of what is or may be an imminent and substantial endangerment to the public health or welfare or the environment, HPI must immediately notify the National Response Center at 1-800-424-8802, the MDNR Spill Line at 573-634-2436, and provide any other required notifications to federal, state, or local agencies.  HPI must contact the MDNR and EPA Project Coordinators orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after HPI first knew of, or should have known of, the incident or condition.  In addition, HPI must also notify MDNR and EPA Project Coordinators of any release of hazardous waste into the environment regardless of the quantity.  Nothing in this Consent Decree limits the authority of MDNR or EPA to take or order all actions necessary to protect human health, welfare, or the environment or to prevent, abate, or minimize an actual or threatened release of hazardous substances, hazardous wastes, or solid wastes, at or from any of the Facilities.

## IX.  STIPULATED PENALTIES

51.  The Defendants shall be liable for stipulated penalties to the State and the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).

52.  Non-compliance with Compliance Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Sections IV, V and VIII of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 14th Day |
| $8,000 | 15th through 30th Day |
| $16,000 | 31st Day and beyond |

53. <u>Non-Compliance with Reporting and Access/Recordkeeping Requirements.</u>  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements set forth in Section VII of this Consent Decree and for each violation of the access and recordkeeping requirements set forth in Section XIII of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,500 | 1st through 14th Day |
| $3,000 | 15th through 30th Day |
| $5,000 | 31st Day and beyond |

54. <u>Non-Compliance with Any Other Requirement.</u>  The following stipulated penalties shall be accrue per violation per Day for any noncompliance other than that identified in Paragraphs 52 (Non-Compliance with Compliance Requirements) or 53 (Non-Compliance with Reporting and Access/Recordkeeping Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

55.  Subject to the Force Majeure provisions of this Consent Decree, stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a

violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree. Penalties shall accrue regardless of whether EPA or MDNR has notified the relevant Defendant of a violation.

56. Any stipulated penalties applicable to a deficient or incomplete submission under this Consent Decree shall accrue during the specified resubmission period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of HPI's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission. Any determination by EPA or MDNR that a resubmission is materially deficient is subject to HPI's right to initiate dispute resolution under Section XI of this Decree (Dispute Resolution).

57. Either Plaintiff may issue a demand for payment of a stipulated penalty, with a copy to the other Plaintiff.

58. The Defendants shall pay stipulated penalties to the State and the United States within no more than thirty (30) Days of a written demand by either Plaintiff. The Defendants shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the State.

59. The State or the United States may, in the unreviewable exercise of their discretion, reduce or waive stipulated penalties otherwise due that sovereign under this Consent Decree.

60. Stipulated penalties shall continue to accrue as provided in Paragraphs 55 and 56, above, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, the Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States and/or the State within no more than thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, the Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within no more than sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph (c), below.

c. If any Party appeals the District Court's decision and the United States or the State prevails, the Defendants shall pay all accrued penalties determined to be owing, together with interest, within no more than fifteen (15) Days of receiving the final appellate court decision.

61. The Defendants shall pay stipulated penalties owed to the United States by FedWire Electronic Funds Transfer (EFT) to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Missouri. At the time of payment, the Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States v. HPI Products, Inc., et al., and shall reference the civil action number and DOJ case number 90-5-1-1-09338, to the United States in accordance with Section XIV of

this Decree (Notices and Submittals); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

62. The Defendants shall pay stipulated penalties owed to the State by certified check made payable to the "State of Missouri (Buchanan County Treasurer)", as custodian of the Buchanan County School Fund. The check shall be sent to the Attorney General with the signed Decree to the following address: Collections Specialist, Office of the Attorney General, P.O. Box 899, Jefferson City, Missouri, 65102-0899.

63. If a Defendant fails to pay stipulated penalties in accordance with the terms of this Consent Decree, the Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due through the date of payment. Nothing in this Paragraph shall be construed to limit the State or the United States from seeking any remedy otherwise provided by law for a Defendant's failure to pay any stipulated penalties.

64. Subject to the provisions of XIII of this Consent Decree (Effect of Decree; Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the State or the United States for a Defendant's violation of this Consent Decree or applicable law.

65. The payment of stipulated penalties shall not alter or diminish any Defendant's obligation to complete the performance of the actions described in this Consent Decree.

## X. <u>FORCE MAJEURE</u>

66.  "Force Majeure," for purposes of this Consent Decree, is defined as any event arising

from causes beyond the control of HPI, of any entity controlled by HPI, or of HPI's contractors,

that delays or prevents the performance of any obligation under this Consent Decree despite

HPI's best efforts to fulfill the obligation.  The requirement that HPI exercise "best efforts to

fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event

and best efforts to address the effects of any such event (a) as it is occurring, and (b) after it has

occurred, to prevent or minimize any resulting delay to the greatest extent possible.  "Force

Majeure" does not include HPI's financial inability to perform any obligation under this Consent

Decree.

67.  If any event occurs or has occurred that may delay the performance of any obligation

under this Consent Decree, whether or not caused by a Force Majeure event, HPI shall provide

notice orally or by electronic or facsimile transmission to Plaintiffs' Project Coordinators within

no more than 72 hours of when HPI first knew that the event might cause a delay.  Within no

more than seven (7) Days thereafter, HPI shall provide in writing to MDNR and EPA an

explanation and description of the reasons for the delay; the anticipated duration of the delay; all

actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of

any measures to be taken to prevent or mitigate the delay or the effect of the delay; HPI's

rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim;

and a statement as to whether, in the opinion of HPI, such event may cause or contribute to an

endangerment to human health, welfare or the environment.  HPI shall include with any notice

all available documentation supporting the claim that the delay was attributable to a Force

Majeure. Failure to comply with the above requirements shall preclude HPI from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. HPI shall be deemed to know of any circumstance of which HPI, any entity controlled by HPI, or HPI's contractors knew or should have known.

68. If EPA, after consultation with MDNR, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify HPI in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

69. If EPA, after consultation with MDNR, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify HPI in writing of its decision.

70. If HPI elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice under Paragraph 69. In any such proceeding, HPI shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that HPI complied with the requirements of Paragraph 67, above. If HPI

carries this burden, the delay at issue shall be deemed not to be a violation by HPI of the affected obligation of this Consent Decree identified to MDNR, EPA and the Court.

71. Unanticipated or increased costs or expenses associated with the performance of HPI's obligations under this Consent Decree shall not constitute a Force Majeure event. However, any delay in the performance of a compliance obligation resulting from the failure of a governmental permitting authority to issue a necessary permit or permit modification in a timely fashion shall qualify as a Force Majeure event, if HPI has submitted a timely and complete application and has taken all other actions necessary to obtain such permit or permit modification, including without limitation, submitting to the permitting authority all relevant and available information requested by such authority.

## XI. DISPUTE RESOLUTION

72. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism for resolving disputes arising under or with respect to this Consent Decree. HPI's failure to seek resolution of a dispute under this Section shall preclude HPI from raising any such issue as a defense to an action by the State or the United Statesto enforce any obligation of HPI arising under this Decree. The procedures set forth in this Section shall not apply to actions by any Plaintiff to enforce obligations of HPI that have not been disputed byHPI.

73. Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. Such informal negotiations may be conducted in any manner agreed to by the parties. However, the rights and protections afforded to HPI by this Section may not be invoked unless and until HPI sends Plaintiffs a

written Notice of Dispute stating clearly the matter in dispute.  Regardless of the manner in which informal dispute resolution negotiations are being conducted, the period of informal negotiations shall terminate fifteen (15) Days from the date the Notice of Dispute is sent, unless that period is modified by written agreement.  If the parties cannot resolve a dispute by informal negotiations before the period of informal negotiations terminates as provided in this Paragraph, then the position advanced by the United States after consultation with the State shall be considered binding unless, within no more than ten (10) Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

74.  <u>Formal Dispute Resolution.</u>  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on Plaintiffs a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

75.  The United States, after consultation with the State, shall serve a Statement of Position within no more than forty-five (45) Days of receipt of the Defendants' Statement of Position, with a copy to the State.  Such Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The Statement of Position served by the United States shall be binding on the Defendants, unless the Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

76.  The Defendants may seek judicial review by filing with the Court and serving on Plaintiffs, in accordance with Section XIV of this Consent Decree (Notices and Submittals), a motion requesting judicial resolution of the dispute.  The motion must be filed within no more than ten (10)  Days of receipt of the Statement of Position served by the United States pursuant to the preceding Paragraph.  The motion shall contain a written statement of the Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

77.  The United States, after consultation with the State, shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

78.  Standard of Review

    a.  <u>Disputes Concerning Matters Accorded Record Review.</u>  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 74 (Formal Dispute Resolution), pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA or MDNR under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United Statesis arbitrary and capricious or otherwise not in accordance with law.

b.  <u>Other Disputes.</u>  Except as otherwise provided in this Consent Decree, in any

other dispute brought under Paragraph 74 (Formal Dispute Resolution), the

Defendants  shall bear the burden of demonstrating that its position complies with

this Consent Decree and furthers the expeditious achievement of the objectives of

the Consent Decree, after taking into account the relative difference in cost, if

any, imposed on HPI as between the Defendants' position and the United States'

position.  In any dispute regarding modification of this Consent Decree, the Party

seeking the modification bears the burden of demonstrating that it is entitled to

the requested modification in accordance with Federal Rule of Civil Procedure

60(b).

79.  The invocation of dispute resolution procedures under this Section shall not, by

itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent

Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with

respect to the disputed matter shall continue to accrue from the first Day of noncompliance as

provided in this Consent Decree, but payment shall be stayed pending resolution of the dispute as

provided in Paragraph 60.  If Defendants do not prevail on the disputed issue, stipulated penalties

shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.  <u>ACCESS; INFORMATION COLLECTION AND RETENTION</u>

80.  Each Defendant hereby certifies that, to the best of its knowledge and belief, after

thorough inquiry, it has submitted to EPA Financial Information that fairly, accurately, and

materially sets forth its financial circumstances, and that those circumstances have not materially

changed between the time the Financial Information was submitted to EPA and the time such Defendant executes this Consent Decree.

81. The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facilities, at all reasonable times, upon presentation of credentials, to:

      a. monitor the progress of activities required under this Consent Decree or the UAOs;

      b. verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree or the UAOs;

      c. obtain samples and, upon request, splits of any samples taken by HPI or its representatives, contractors, or consultants;

      d. obtain documentary evidence, including photographs and similar data; and

      e. assess HPI's compliance with this Consent Decree.

82. Upon request, HPI shall provide EPA, MDNR, or their authorized representatives splits of any samples taken by HPI. Upon request, EPA or MDNR shall provide HPI splits of any samples taken by EPA or MDNR.

83. Until five years after the termination of this Consent Decree, HPI shall retain, and shall instruct its contractors and agents to preserve, one set of all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to HPI's performance of its obligations under this Consent Decree. This information-retention

requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the State, HPI shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

84.  At the conclusion of the information-retention period provided in the preceding Paragraph, HPI shall notify the United States and the State at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, HPI shall deliver any such documents, records, or other information to EPA and/or MDNR.  HPI may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by state or federal law.

85.  If HPI asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by HPI.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

86.  HPI may also assert that information required to be provided to EPA under this Section is protected as Confidential Business Information (CBI) under 40 C.F.R. Part 2.  As to any information that HPI seeks to protect as CBI, HPI shall follow the procedures set forth in 40 C.F.R. Part 2.

87. HPI may also assert business confidentiality claims covering part or all of the documents or information submitted to the State under this Consent Decree to the extent permitted by and in accordance with §§ 260.430 and 610.021, RSMo. If no claim of confidentiality accompanies documents or information when they are submitted to the State, the public may be given access to such documents or information without further notice to HPI.

88. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of HPI to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII. EFFECT OF DECREE; RESERVATION OF RIGHTS

89. This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the date of lodging of the Consent Decree.

90. Notwithstanding any other provision of this Consent Decree, the United States and State reserve, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information provided by Defendants, or the certification made by Defendants in Paragraph 80, is false or, in an material respect, inaccurate.

91. The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 89. This Consent Decree shall not be construed to limit the rights of the United States or the State to

obtain penalties or injunctive relief under RCRA, the CWA, the corresponding state statutes, and their implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 89.  The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the human health or welfare or the environment arising at, or posed by, the Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

92.  Except as specifically provided by applicable statute or regulation, this Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. HPI is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits, and HPI's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that HPI's compliance with any aspect of this Consent Decree will result in compliance with provisions of RCRA, the CWA, the corresponding state statutes, and their implementing regulations, or with any other provisions of federal, state, or local laws, regulations, or permits.

93.  This Consent Decree does not limit or affect the rights of Defendants or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

94.  This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

95.   Any information provided or obtained pursuant to this Consent Decree may be used

by the United States or the State in any proceeding to enforce the provisions of this Consent

Decree and as otherwise permitted by law.

XIV.  <u>NOTICES AND SUBMITTALS</u>

96.   In addition to the reporting requirements set forth in Section VI (Reporting and

Notice Requirements) all notices and submittals required pursuant to this Consent Decree, unless

otherwise specified herein, shall be transmitted via overnight mail, with an optional courtesy

copy by electronic mail, to:

TO THE UNITED STATES OF AMERICA:

Chief, Environmental Enforcement Section
United States Department of Justice
Environmental Enforcement Section
601 D Street, NW (for overnight mail)
Washington, D.C. 20044-7611

P.O. Box 7611 (for postal service)
Washington, D.C.  20004

Belinda Holmes
Senior Counsel
United States Environmental Protection Agency
Region 7
901 N. 5th Street
Kansas City, Kansas 66101

TO THE STATE:

Jack McManus
Chief Counsel
Agriculture and Environment Division
Office of the Attorney General
P.O. Box 899
Jefferson City, Missouri 65102-0899
Jack.Mcmanus@ago.mo.gov

Leanne Tippett Mosby
Director
Division of Environmental Quality
Missouri Department of Natural Resource
P.O. Box 176
Jefferson City, Missouri 65102-0176
Leanne.Tippett.Mosby@dnr.mo.gov
Betsy.Crawford@dnr.mo.gov

William Garvey
222 Sylvanie
St. Joseph, MO 64501

Robert Garvey
222 Sylvanie
St. Joseph, MO 64501

97.  Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

98.  Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.  PUBLIC COMMENT

99.  Final approval of this Consent Decree by the United States is subject to the public notice, comment, an participation requirements under RCRA and 28 C.F.R. § 50.7.  This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold consent to this Consent Decree if the comments received disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  The Defendants consent to entry of this Consent Decree without further notice and

agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge

any provision of the Decree, unless the United States has notified them in writing that it no

longer supports entry of the Decree.

## XVI.  COSTS

100.  Each party shall bear its own costs and attorneys' fees in this action, except that the

United States and the State shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to collect any portion of the civil penalty or any stipulated

penalties due but not paid by the Defendants.

## XVII.  MODIFICATION

101.  Non-material modifications of this Consent Decree may be made by agreement of

EPA, MDNR, and the Defendants.  All such modifications shall be made in writing.

102.  Material modifications of this Consent Decree shall only be made through written

agreement among the United States, the State, and the Defendants, with approval of the Court.

## XVIII.  INCORPORATION

103.  All Appendices to this Consent Decree and all documents approved by EPA

pursuant to this Decree are deemed incorporated into, and made an enforceable part of, this

Decree.

## XIX.  RETENTION OF JURISDICTION

104.  The Court shall retain jurisdiction over both the subject matter of this Consent

Decree and the Defendants for the duration of the performance of the terms and provisions of

this Consent Decree for the purposes of enforcing the terms and conditions of the Consent

Decree and of resolving disputes arising under this Decree or entering orders modifying this Decree until termination of the Consent Decree or further Order of the Court.

## XX.  INTEGRATION

105.  This Consent Decree and its Appendices,  and the documents to be developed pursuant to Section V (Compliance Requirements), constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the Appendices, which are attached to and incorporated in this Decree, and deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

106.  Headings in this Decree are provided for convenience only and shall not affect the substance of any provision.

## XXI.  EFFECTIVE DATE

107.  The Effective Date of this Consent Decree shall be the date upon which the District Court approves the Consent Decree.

## XXII.  TERMINATION

108.  This Consent Decree shall terminate upon the complete and satisfactory performance, as determined by the United States after consultation with the State, by Defendants of their obligations under this Decree.  Upon such a determination, the Parties shall file with the

Court an appropriate stipulation reciting that the requirements of the Consent Decree have been met and requesting termination of the Decree.

## XXIII.  SIGNATORIES; SERVICE

109.  Each Defendant shall identify on the attached signature page the name, address and telephone number of an agent who is authorized to accept service by mail of all documents on its behalf with respect to all matters arising under or relating to this Consent Decree, including the Complaint and this Consent Decree.  Each Defendant waives formal service of process requirements of Federal Rule of Civil Procedure 4 and any applicable local Rules of this Court, including but not limited to, service of a summons.

110.  The undersigned representative of each Defendant certifies that such representative is fully authorized to enter into this Consent Decree and to execute and to legally bind the corresponding Defendant.

111.  This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

## XXIV.  FINAL JUDGMENT

112.  Upon approval and entry of this Consent Decree by the Court, and there being no just reason for delay, this Consent Decree shall constitute a final judgment pursuant to FED. R. CIV. P. 54(b) and 58 as among the parties to this Consent Decree.

Dated and entered this   12th   day of  January   , 2011.


/s/ Greg Kays
GREG KAYS
UNITED STATES DISTRICT JUDGE

FOR PLAINTIFF UNITED STATES OF AMERICA

DATE: 11/15/2010

ELLEN MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

DATE: 11/15/2010

ERIC D. ALBERT
Sara Wyche
Trial Attorneys
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-2800
Eric.albert@usdoj.gov

51

DATE: 11/10/10

KARL BROOKS
Regional Administrator
United States Environmental Protection Agency
Region 7
901 N. 5th Street
Kansas City, Kansas 66101

DATE: 10/25/10

BELINDA HOLMES
Senior Counsel
United States Environmental Protection Agency
Region 7
901 N. 5th Street
Kansas City, Kansas 66101

FOR PLAINTIFF STATE OF MISSOURI

DATE: 10/14/10

CHRIS KOSTER, Attorney General

Kara L. Valentine
Assistant Attorney General
MBE #40926
P.O. Box 899
Jefferson City, Missouri 65102

DATE: 10/22/10

DEPARTMENT OF NATURAL RESOURCES

Leanne Tippett-Mosby
Director, Division of Environmental Quality
P.O. Box 176
Jefferson City, Missouri 65102

FOR DEFENDANT HPI PRODUCTS, INC.

DATE: 9-21-10

By: WALLIE GARDNER
PRESIDENT

FOR DEFENDANT ST. JOSEPH PROPERTIES, LLC.

DATE: 9-21-10

By: _____

GEN PARTNER
w/a R GARNER

<u>DEFENDANT WILLIAM GARVEY</u>

DATE: 9·21·10

WILL E CARVEY