# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, <br> THE STATE OF MISSOURI, ex rel. <br> ERIC SCHMITT, Attorney General, <br> and the MISSOURI DEPARTMENT OF <br> NATURAL RESOURCES, <br><br> Plaintiffs, <br><br> v. <br><br> HPI PRODUCTS, INC., ST. JOSEPH <br> PROPERTIES, LLC, and <br> WILLIAM GARVEY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 5:08-CV-06133-DGK |

## ORDER TERMINATING RECEIVERSHIP DEFENDANTS' OPERATIONS

Receivership Defendants[1] own and operate a manufacturing and chemical production facility in St. Joseph, Missouri. On December 23, 2008, the United States of America and the State of Missouri ("Plaintiffs") filed a complaint seeking civil penalties and injunctive relief arising from Receivership Defendants' handling of hazardous waste. ECF No. 1. The parties negotiated a settlement and entered into a consent decree and then a modified consent decree, which were approved by the Court on January 12, 2011, and July 27, 2011, respectively ("Consent Decree"). ECF Nos. 34, 37. Over the last eleven years, Receivership Defendants have repeatedly failed to meet their obligations under the Consent Decree. *See* Order Enforcing Judgment, ECF No. 46; Order Holding Defendants in Contempt; ECF No. 50. In March 2018, the Court concluded that Receivership Defendants had made no effort to comply with the Consent Decree, and entered an order holding Receivership Defendants in civil contempt and appointing a receiver. Order Holding

---

[1] Though a receivership has only been in place since January of 2022, the Court uses the term "Receivership Defendants" throughout this Order for the sake of consistency.

Defendants in Contempt; ECF No. 50. Receivership Defendants then made some efforts to comply with the Consent Decree, and the parties jointly requested the Court stay the Order holding Receivership Defendants in civil contempt and appointing a receiver, which the Court granted. Order Granting Stay, ECF No. 52. Receivership Defendants' efforts to comply with the Consent Decree subsequently stalled again, and on June 15, 2021, Plaintiffs again requested the Court appoint a receiver, freeze Receivership Defendants' assets, and enjoin Receivership Defendants from further generation of waste. ECF No. 79. On January 14, 2022, the Court granted that motion and appointed "Estate of HPI Products, Inc. et al. Receivership LLC," a limited liability company created by Greenfield Environmental Trust Group, as Temporary Receiver. Order, ECF No. 89. On June 27, 2022, the Temporary Receiver filed a status report ("June 27, 2022, Status Report") detailing the efforts taken to clean up Receivership Defendants' properties. June 27, 2022, Status Report, ECF No. 125. The Temporary Receiver noted that

> Receivership Defendants have been unable to turn the proverbial corner during the Receivership. Despite the Temporary Receiver's best efforts to set the Receivership Defendants up for success (e.g., by upgrading financial controls, enhancing cash-flow monitoring activities, reducing operating expenses, and confirming major customer orders), the Receivership Defendants have neither achieved a sustainable, consistent production level nor proven to the Temporary Receiver that they are capable of independently (i.e., without meaningful oversight) protecting public and worker health and safety as part of their operational activities.

*Id.* at 13. The Temporary Receiver also noted that Receivership Defendants were unable "to operate in a cost-effective manner," had a "less than stellar track record relative to health and safety matters," and that Receivership Defendants' "lack of responsiveness, inaccurate forecasts, and unwillingness to improve upon or change past practices have inspired little to no confidence in their businesses' prospects—let alone their ability to meaningfully address environmental obligations pursuant to the Consent Decree." *Id.* at 15. These conclusions are backed up by multiple affidavits from Kevin Snowden, the EPA Environmental Scientist who has inspected

2

Receivership Defendants' properties during the course of this litigation. *See e.g.*, Suppl. Decl. of Kevin D. Snowden, ECF No. 135-1. The Temporary Receiver therefore suggested that the Court order Receivership Defendants' businesses be wound down to protect the environment and the health and safety of Receivership Defendants' employees. June 27, 2022, Status Report at 14–16, ECF No. 125.

The Court thereafter extended the Temporary Receivership until December 30, 2022, and directed Receivership Defendants to respond to the status report. Order, ECF No. 126. Receivership Defendants filed their response on July 12, ECF No. 128, and the Temporary Receiver filed its reply on July 22, 2022, ECF No. 130.

On July 26, 2022, the Court ordered Plaintiffs to file a brief outlining their position by August 5, 2022, and a proposed order on or before August 12, 2022. Order, ECF No. 134. Plaintiffs thereafter filed a motion and proposed order requesting that the Court adopt the Temporary Receiver's recommendation and terminate Receivership Defendants' operations. ECF No. 135, 143.[2] Defendants and the Temporary Receiver each filed their responses on August 19, 2022. ECF Nos. 140, 142.

Receivership Defendants understandably take issue with the Court winding down their businesses. However, the best that could be said of Receivership Defendants is that—over the course of the last decade—they have been on occasion minimally compliant with the Court's orders and with environmental, health, and safety laws. Upon review of the parties' filings, the Court concludes that, given the intrinsically dangerous nature of Receivership Defendants'

---

[2] The Temporary Receiver requested additional clarification from Plaintiffs regarding its responsibilities moving forward should the Court order Receivership Defendants' businesses be wound down, the period it would be expected continue serving as a receiver, and how its future fees and expenses would be funded. Resp., ECF No. 140. The Court ordered Plaintiffs and the Temporary Receiver to either brief these issues or file a joint proposed order addressing the issues. Plaintiffs and Temporary Receiver chose to file a joint proposed order, ECF No. 152.

3

businesses, the health and safety of the public and the environment requires Receivership Defendants' businesses be wound down. As such, the Court Orders the following:

1. The Court rescinds its prior Order extending the Temporary Receiver's appointment until December 30, 2022, ECF No. 126. Temporary Receiver's appointment is extended for a period of 60 calendar days from the date of this Order for the purpose of overseeing the orderly cessation of Receivership Defendants' business operations in St. Joseph, Missouri as specified below, provided that any and all such oversight will be performed only to the extent practicable and only to the extent of available funding. Unless otherwise ordered by the Court, after such 60-day period, the Temporary Receiver will be relieved of its duties and responsibilities described under this Order and prior Court Orders, and Receivership Defendants will be solely responsible for taking actions to wind down business operations. To be clear, any activities to be performed by the Temporary Receiver pursuant to this Order and prior Orders may, as necessary, be performed with support from one or more third-party professionals.

2. Temporary Receiver shall secure, or oversee Receivership Defendants' efforts to secure, all real properties owned by Receivership Defendants (collectively, the "Properties"), including buildings, improvements, and equipment located thereon, in order to prevent any unauthorized access to the Properties and to thereby prevent trespassers' or other individuals' exposure to contamination and exacerbation of hazardous conditions at the Properties. In addition to any other activities that may be necessary to secure the Properties, Temporary Receiver and/or Receivership Defendants shall take all steps necessary to ensure that all access points and doors, including all garage and loading bay doors, have working locks, latches, bolts, etc., that

restrict access except as the Temporary Receiver permits access to perform the activities allowed by this Order. Keys to all existing locks shall be collected from all persons possessing them, provided that Temporary Receiver shall obtain or be provided with keys to any new locks that may be needed to secure the Properties, and provided further that William Garvey, Mike Garvey, and/or another individual(s) with the Temporary Receiver's prior written approval (the "Authorized Key Holder(s)") may retain the keys in their possession to support Temporary Receiver's performance of the activities allowed by this Order. Temporary Receiver currently estimates that the costs and expenses for the site security activities described in this paragraph will total approximately $7,000.

3. Upon Plaintiffs' request, and not limited to the term of the Receivership, the Temporary Receiver, an Authorized Key Holder, or upon termination of the Receivership, Defendants, shall provide the Plaintiffs and their representatives and contractors access to the Properties at all reasonable times for the purposes of conducting any and all environmental activities for the protection of public health and the environment and/or compliance with law.

4. Receivership Defendants' business operations relating to chemical formulation/mixing, packaging, storage, distribution, sale and/or disposal at the Properties shall cease immediately and permanently, except that production activities that are underway as of the date of this Order may continue through the earlier of the date of completion of such production activities or 7 calendar days from the date of this Order. Temporary Receiver shall supervise all activities associated with completing production and all such activities shall be in compliance with all applicable laws. Production may not

5

occur if there are no funds to allow for oversight by the Temporary Receiver. Temporary Receiver currently estimates that the costs and expenses for the supervisory activities described in this paragraph will total approximately $6,000.

5. With Temporary Receiver's oversight, Receivership Defendants shall, within 3 business days of the date of this Order, notify all persons and businesses owning raw materials, inventory, and/or products stored or otherwise present at or on any of the Properties that those persons and/or businesses may arrange to pick up such materials, inventory, and/or products, provided that any pick-up arrangements shall be on terms and conditions acceptable to Temporary Receiver, including payment by persons and businesses of the costs and expenses associated with making such materials, inventory, and/or products available for safe and efficient retrieval. Retrieval of such materials, inventory, and/or products shall occur within 30 calendar days of the above-described notification. Receivership Defendants shall, within 3 business days of providing the above-mentioned notices, provide Temporary Receiver with a copy of each notice given. Within 15 business days of notification in this Paragraph, the Receivership Defendants will provide the Temporary Receiver a list all persons and businesses owning raw materials, inventory, and/or products stored or otherwise present at or on any of the Properties that have responded to Receivership Defendants' notice. Temporary Receiver will assist Receivership Defendants in arranging and facilitating pick-ups in a manner that is efficient and protective of human health and the environment, including by endeavoring to retain key personnel (subject to prior consultation with Temporary Receiver and Temporary Receiver's prior written approval for any such retention(s)) in support of pick-up activities. Any pick-up

activities must be approved by EPA. Temporary Receiver currently estimates that the costs and expenses for the material/inventory/product-return activities described in this paragraph will total at least $20,000.

6. Upon the expiration of the 30-day period within which materials and products may be picked up, any raw materials or finished products not claimed within that period will be deemed "waste" under 40 C.F.R. Part 261 and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. The notice provided by Receivership Defendants pursuant to Paragraph 5 shall inform persons and businesses owning raw materials, inventory, and/or products stored or otherwise present at or on any of the Properties that the failure to retrieve same may cause such persons and businesses to be liable for disposal costs.

7. All unpaid or to-be-incurred costs associated with activities required by this and previous Court Orders, including the fees and expenses of Temporary Receiver accrued to date and to be accrued during the extended Temporary Receivership,[3] shall be funded by revenue generated from operations and, as appropriate, from the remaining escrow funds, with the Plaintiffs' approval. Temporary Receiver may submit a fee application to the Court for its fees and expenses that have been incurred in recent months. Temporary Receiver currently estimates that its fees and expenses for the extended Temporary Receivership will total approximately $25,000. To be clear, Temporary Receiver's duties and responsibilities described in this Order are only required to the extent of available funding, and no provision of this Order or previous Orders shall require the Temporary Receiver to expend or risk its own personal funds or otherwise

---

[3] Temporary Receiver will be submitting a fee application to seek the Court's approval for its fees and expenses that have been incurred in recent months.

incur any personal financial liability in the performance of any of its duties or the exercise of any of its authorities as Temporary Receiver hereunder, or in the exercise of any of its rights or powers.

8. Revenue received to date or to be received for the duration of the extended Temporary Receivership, including revenue in satisfaction of current accounts receivable or generated from the sale of unclaimed raw materials, inventory, or products, or from products in production as of the date of this Order, as well as the proceeds, if any, of any Receivership Assets that are liquidated during the extended Temporary Receivership, shall, at the termination of the Temporary Receivership, unless needed to fund the Temporary Receiver's fees and expenses, and upon the Court's review and approval, be made available to Plaintiffs for performance of activities in furtherance of Consent Decree compliance.

9. The parties shall file status updates every thirty days, beginning thirty days from the date of this Order.

**IT IS SO ORDERED.**

DATED: <u>September 19, 2022</u>         <u>/s/ Greg Kays</u>
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT